# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| LD MANAGEMENT LLC AND MICHAEL LUKACS, <br><br> Plaintiffs, <br><br> vs. <br><br> FIRST REPUBLIC BANK, INC. <br><br> Defendant. | **CIVIL ACTION No.** <br><br><br> **COMPLAINT AND JURY DEMAND** |

Plaintiffs LD Management LLC ("LDM") and Michael Lukacs ("Lukacs") (collectively "Plaintiffs") by way of complaint against defendant First Republic Bank, Inc. ("First Republic"), says:

## NATURE OF ACTION

1.     This action is the result of defendant First Republic's repeated failures to adhere to common sense, commercially reasonable security and banking industry standards, as well as FDIC and other Federal and State regulations concerning the identification of suspicious activity on persons and/or companies who maintain assets at First Republic Bank. These duties included, among other things, creating policies and procedures to identify suspicious activity on customers assets, taking the steps necessary to detect, identify, intercept, prevent, and stop foreseeable criminal activity on First Republic Bank's customers accounts/assets such as the Plaintiffs.

2.     As alleged herein, First Republic breached its duties to the Plaintiffs, including but not limited to identifying suspicious communications between a perpetrator and First Republic's employee(s), notifying and escalating red flags to First Republic's Bank senior employees and

1

compliance department, identifying and preventing fraudulent wire transfers and repeated requests for large cash withdrawals to be picked up by persons who were not authorized singers of the account, forgery, and providing access to Bank Accounts that the perpetrator was never authorized to have access too. Specifically, First Republic's conduct deviated from any acceptable standards of reasonable commercial practice and permitted LDM's former employee ("Jane Doe") and her husband ("Jack Doe"), to engage in a brazen embezzlement scheme that netted Jane Doe and Jack Doe in an amount Plaintiffs believe to exceed millions of dollars, which will be proven at trial.

3.        In fact, over period of months and years, First Republic repeatedly authorized wire transfers and cash withdrawals, sometimes in the high five figures or even six figure amounts, based on nothing more than an email from Plaintiff's former employee with no copy being sent to Mr. Lukacs.  In addition, First Republic accepted a signature stamp from the former employee as "authorization" that it was purported to be from the Plaintiff's managing member. However,  this forged signature stamp bore no resemblance to the Plaintiff's actual wet signature and as a stamp, was in and of itself highly suspicious, which in turn should have caused First Republic Bank to investigate same and stop these transactions until it could communicate with Mr. Lukacs, but it was to no avail.

4.        Not only did First Republic allow Jane Doe to access the funds of LDM's accounts repeatedly and fraudulently at its institution, but they also repeatedly provided Jane Doe with full access to steal monies from the personal funds of Lukacs, and she did just that, by either fraudulent wire transfers and/or by sending her husband or others to pick up large cash amounts directly from First Republic. Furthermore, Jane Doe also directed First Republic to provide her the stolen monies in specific denominations.

5.     At a minimum, both Doe's suspicious activity and large cash withdrawals, the obvious use of a signature stamp in lieu of Lukacs's wet signature, and the provision of corporate and legal documents containing gross inconsistencies, should have caused and required First Republic to take all appropriate commercially reasonable steps, including but not limited to contacting Lukacs directly about the suspicious activities, immediately freezing LDM's account until such red flags were resolved,  contacting its internal compliance department and/or law enforcement.

6.     First Republic's conduct not only breached their contractual obligations to Plaintiffs, failed to comply with commercial reasonable standards of care, violated state and federal banking and anti-money laundering requirements, and but also demonstrated a reckless disregard for Plaintiffs' rights and a conscious indifference to Plaintiffs' security.

7.     As a result of First Republic's acts and omissions and failure to meet its legal duties, Plaintiff suffered damages believing to exceed millions of dollars, which will be proven at trial.

**THE PARTIES**

8.     Plaintiff LDM is a New Jersey limited liability company with its principal place of business located at 275 Indian Trail, Franklin Lakes, New Jersey.

9.     Plaintiff Lukacs is an individual and the managing member of LDM and resides at 275 Indian Trail, Franklin Lakes, New Jersey. Lukacs funded the LDM account at First Republic with his personal funds and also had separate personal accounts at First Republic apart from the LDM account.

10.     Defendant First Republic is a financial institution headquartered at 111 Pine Street, San Francisco, California.

11.     LDM's account at First Republic was managed by First Republic's New York branch, which has a principal place of business at 1230 Avenue of the Americas, 3rd Floor, New York, New York.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) because there exists complete diversity of citizenship between plaintiffs and defendants, and because the amount in controversy exceeds the jurisdictional requirement exclusive of costs and interest.

13.     Venue in this district is proper pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events or omissions giving rise to the claims occurred and/or originated out of the state of New Jersey and a substantial part of the property that is the subject of the action is owned by a New Jersey limited liability company, LDM.

## FACTS COMMON TO ALL COUNTS

14.     Upon information and belief, First Republic knew that Lukacs is a high net worth individual and certain assets of LDM and Lukacs were deposited with First Republic.

15.     Like other FDIC Banks, First Republic had the duty to provide services to its customers such as LDM and Lukacs that were commercially reasonable.  Among other things, Lukacs reasonably expected and relied on First Republic to comply with its duties to him, which among other things included protecting his assets from illicit financial activity, fraud, the theft of his monies, and in identifying and reporting suspicious activity.

16.     Todd Valoff, Managing Director, Preferred Banking an investment advisor and an employee of First Republic supervised LDM and Lukacs's accounts at First Republic.

17.     Upon information and belief, First Republic represented that it would secure Plaintiffs' funds pursuant to the terms Consumer Account and Disclosure Agreement, which set

forth First Republic's responsibilities and duties in managing LDM's accounts and monies, including but not limited to adhering to commercially reasonable security processes and abiding by FDIC and other statutory duties to identify, prevent, protect against, and mitigate against fraudulent conduct.

18.     Upon information and belief, as the managing member of LDM and primary account holder at First Republic, Lukacs was the person authorized to make withdrawals, write checks, transfer funds, stop payments, and otherwise give instructions to First Republic about LDM's account.

19.     As part of First Republic's security measures, while it was permitted to conduct transfers pursuant to email requests from authorized signatories on the accounts, First Republic could only effectuate such transfer if it followed its own internal authentication and security protocols, practices, and FDIC regulations. The Plaintiffs reasonably relied on First Republic to comply with commercially reasonable standards and practices, which at their core required it to identify suspicious activity and illicit financial activity, but it did no such thing.

20.     In addition, First Republic had a duty to comply with the statutory duties of all FDIC banking institutions. These duties included but were not limited to managing the bank accounts of LDM and as to any accounts owned personally by Michael Lukacs in a commercially reasonable manner. Further, First Republic was also required to comply with industry standard customer due diligence policies, procedures and processes, including, having internal controls commensurate with the Bank Secrecy Act and Anti-Money-Laundering statutes and pursuant to client risk profile; drafting and implementing a clear statement of management's and staff's responsibilities, including procedures, authority, and responsibility for reviewing and approving changes to a customer's risk profile, as applicable, and providing standards for conducting and

documenting analysis associated with the due diligence process, including guidance for resolving issues when insufficient inaccurate and/or suspicious activity and/or illicit financial activity was identified.

21.      Following the opening of accounts with First Republic, in late 2014, Jane Doe submitted to First Republic two separate documents purporting to show that Doe was being added as an authorized user on Lukacs's account.

22.      First, Doe submitted an Amended and Restated Company Agreement of LDM, which named both Lukacs and Doe as "Managers of the Company" and that "each [has] the power to act independently and alone without the other's consent" pursuant to the New Jersey Limited Liability Company Act.

23.      However, in presenting this document, the signature line for Mr. Lukacs on the Amended and Restated Company Agreement was different from the signature line on the attached original formation document for LDM. This gross indicator of fraud and illicit financial activity should have been identified and handled in accordance with FDIC banking regulations.

2014 LDM Amended and Restated Company Agreement

MICHAEL J. LUKACS, Manager

2010 LDM Company Agreement of LD Management LLC

MICHAEL J. LUKACS, Manager

24.     As is clear, at least by 2014, First Republic was in receipt of a document, the 2010 LDM Company Agreement of LD Management LLC.

25.     Second, in conjunction with Doe's provision of the LDM agreements, Doe also provided First Republic a purported New York Short Form Power of Attorney, purporting to designate Doe as Lukacs's agent and authorized power of attorney.

26.     However, First Republic was aware at the time of receipt of the POA that Lukacs was a New Jersey, not a New York resident. Further, the signature of Lukacs were grossly inconsistent with each other and suspicious. Moreover, Doe herself notarized the POA (which she was the beneficiary of) despite her designating herself as Lukacs's authorized agent.

27.     In addition, upon information and belief, the dates contained in the Power of Attorney were inconsistent and should have raised red flags to First Republic.

28.     Neither of these document submissions raised any red flags at First Republic and, upon information and belief, First Republic never advised Lukacs that Doe was now a Manager of LDM and had a POA over his personal account at First Republic.

29.     On or around June 2016, Doe requested a $250,000 cash withdrawal. First Republic's Managing Director Valoff responded as follows: "We can accommodate, but will need to special order to arrive next Thursday or Friday. This will likely cause some red flags with our

compliance team, due to the nature of the large amount, especially in relation the account balances."

30.     Nonetheless, First Republic fulfilled the withdrawal, and upon information and belief, never raised the request with its internal compliance team nor advised Lukacs of the highly suspicious withdrawal.

31.     Shortly after successfully embezzling funds from LDM and Lukacs in 2016, Doe elaborated her scheme to grant her additional access to LDM's accounts.

32.     Beginning in April 2018 through April 2020, Doe embezzled in excess of at least $1 million in improper cash withdrawals and unauthorized wire transfers in various ways, of which, the full amount of such loss will be proven at trial.

33.     First, Jane Doe would request cash withdrawals from LDM's First Republic account, which she would arrange to be picked up by her husband.

34.     These cash withdrawals would often be requested in excess of $50,000 or more on any one occasion and would be made by Doe directly, without copying Lukacs on such requests.

35.     Further, at no time did Lukacs ever provide First Republic his personal authorization for Jack Doe to be an authorized agent of LDM to permit him to pick up cash withdrawals.

36.     Rather, upon information and belief, Doe used the fraudulent signature stamp as a false basis to have First Republic authorize large cash withdrawals that would be picked up by persons other than the account holder, such as Jack Doe and thus circumvented First Republic's duties to comply with FDIC regulations. Consequently, it permitted Doe improper access to Lukacs's personal assets, without direct authorization and/or confirmation for such access by Lukacs.

37. Further, on more than one occasion, Jane Doe instructed a different third-party to pick up $100,000 in cash withdrawn from LDM's First Republic account. In making this request, Doe did not copy Lukacs on the email and, upon information and belief, First Republic never inquired with Lukacs that the newly identified third-party was in fact authorize to receive such a substantial cash withdrawal.

38. On virtually every occasion, First Republic would happily arrange the withdrawal of cash and for its pickup at a branch in New York City without informing Lukacs of the withdrawal.

39. On some occasions, First Republic would request a verbal confirmation of the requested cash withdrawal. However, rather than obtain such confirmation from Lukacs, the primary holder of the account, First Republic would routinely accept Doe's verbal confirmation for money her husband would be picking up as per her written communications to First Republic.

40. However, by 2020, Doe's withdrawals finally escalated to a point where First Republic could no longer ignore the issue. Specifically in July 2020, Doe requested a $500,000 cash withdrawal.  In response, Valoff stated that he would have to confer with First Republic's Bank Secrecy Act and Anti-Money Laundering and Security officer.

41. Specifically, Valoff advised that if he made this request the Bank Secrecy Act and Anti-Money Laundering and Security officer would require background information and a history of past cash withdrawals" and "may decline future recurring large cash withdrawals."

42. Upon Jane Doe being informed that a withdrawal of this amount would bring attention to Doe's conduct and prohibit future withdrawals, Doe told Valoff "Don't do it!!."

43. None of this was ever reported to Lukacs however.

44.     And by late 2020, Doe was quit LDM's employment based, upon information and belief, as a result of her criminal and fraudulent conduct.

45.     Second, utilizing the fraudulent Power of Attorney, Doe was able to access Lukacs's personal account to write checks to herself or to trusts she controlled.

46.     Third, Jane Doe would request wire transfers to be made to her personally or to other person(s) or accounts she was the beneficiary of and/or controlled.

47.     In doing so, Doe relied on the forged stamp signature of Lukacs to authorize such wire transfers. However, First Republic completely disregarded the characteristics of the "stamp" being used as the primary accounts holder's "acceptance signature."

48.     Moreover, upon information and belief, First Republic should have identified each of the red flags that the requested transfers aligned with and in conjunction with the repeated use by Doe of Lukacs's forged signature stamp that were made by Doe, not Lukacs himself. Yet, First Republic failed to take any steps to notify Lukacs of the suspicious activity via email or phone, nor, upon information and belief, did it notify its internal compliance and security team of this suspicious and illicit financial activity.

49.     Again, First Republic never flagged such transactions as suspicious nor did it ever alert Lukacs of Doe's withdrawal of these stolen funds.

50.     Fourth, Doe effectuated wire transfers to a human resource company responsible for paying staffing expenses. However, the staffing expenses paid by this company were not in service to LDM, but rather were for business owned and/or associated with Jane Doe.

51.     Fifth, on one occasion, Doe, along with the assistance of another LDM former employee, made an application for a credit card for LDM without Lukacs's knowledge or consent. In applying for the card, Doe and the other employee used their fraudulently obtained signature

stamp to sign Lukacs's name, a stamp that bore no resemblance to Lukacs's real signature, and of which, was in and of itself suspicious compared to Lukacs's actual signature as shown below:

Actual Signature:



Michael Lukacs

Forged Signature Stamp:

| Name (please print) | Last 4 Digits of SSN | Signature |
|---|---|---|
| Michael Lukacs | 8212 | |

52.    Upon information and belief, First Republic knew or should have known that these payments were not in service of LDM but were going to be used to pay for payroll and/or other costs to companies unaffiliated with LDM but affiliated with, controlled by, and/or owned by Doe.

## FIRST COUNT

### (VIOLATION OF N.J.S.A. 12A:4A-202 and N.J.S.A. 12A:4A-203)

53.    Plaintiffs repeat and reallege each of the allegations set forth in the preceding paragraphs as if set forth at length herein.

54.    Pursuant to N.J.S.A. 12A:4A-202(1), "[a] payment order received by the receiving bank is the authorized order of the person identified as sender if that person authorized the order or is otherwise bound by it under the law of agency."

55.    N.J.S.A. 12A4A-202(2) states that "[i]f a bank and its customer have agreed that the authenticity of payment orders issued to the bank in the name of the customer as sender will

be verified pursuant to a security procedure, a payment order received by the receiving bank is effective as the order of the customer, whether or not authorized, if (i) the security procedure is a commercially reasonable method of providing security against unauthorized payment orders, and (ii) the bank proves that it accepted the payment order in good faith and in compliance with the security procedure and any written agreement or instruction of the customer restricting acceptance of payment orders issued in the name of the customer."

56.     As set forth above, First Republic violated the provisions of N.J.S.A. 12A:4A-202 by accepting unauthorized wire transfer orders from Jane Doe using Plaintiff's account for Jane Doe's benefit.

57.     Moreover, as set forth above, First Republic failed to maintain commercially reasonable security procedures, which failure directly led to the theft of at least $1 million in improper cash withdrawals and unauthorized wire transfers, and the full amount of such loss will be proven at trial.

58.     In addition, because First Republic failed to confirm authorization for the wire transfers with Lukacs, as opposed to relying on Jane Doe's falsely purported authorizations, First Republic failed to accept the payment order in good faith.

59.     Accordingly, pursuant to N.J.S.A. 12A:4A-203, the wire transfers were unenforceable. Nonetheless, First Republic effectuated the transfers.

60.     N.J.S.A. 12A:4A-204 provides that "If a receiving bank accepts a payment order issued in the name of its customer as sender which is (i) not authorized and not effective as the order of the customer under section 12A:4A-202, or (ii) not enforceable, in whole or in part, against the customer under section 12A:4A-203, the bank shall refund any payment of the payment order received from the customer to the extent the bank is not entitled to enforce payment and shall

pay interest on the refundable amount calculated from the date the bank received payment to the date of the refund."

61.    Given the above facts, pursuant to N.J.S.A. 12A:4A-204, First Republic is liable for its payment of unenforceable transfers, and thus must refund to Plaintiff all amounts transferred subject to improper wire transfers.

62.    As a direct and proximate cause of Defendant's breaches, Plaintiff was damaged.

WHEREFORE, Plaintiffs demands judgment against Defendants for compensatory damages, punitive damages, costs of suit and reasonable attorney's fees.

## SECOND COUNT

### (Negligence)

63.    Plaintiffs repeat and reallege each of the allegations set forth in the preceding paragraphs as if set forth at length herein.

64.    First Republic assumed a duty and agreed to use reasonable care to protect Plaintiff's bank accounts and funds secure and free from fraud, theft and embezzlement. However, as set forth herein, First Republic breached this duty repeatedly over a course of years.

65.    Specifically, First Republic breached its duty to Plaintiff in repeated acceding to Jane Doe's requests to make large cash withdrawals that would be picked up from the First Republic New York branch by Jack Doe.

66.    As a direct and proximate result of Defendant's breaches, Plaintiff has been damaged.

WHEREFORE, Plaintiffs demands judgment against Defendants for compensatory damages, punitive damages, costs of suit and reasonable attorney's fees.

## THIRD COUNT

### (BREACH OF CONTRACT)

67.     Plaintiffs repeat and reallege each of the allegations set forth in the preceding paragraphs as if set forth at length herein.

68.     Plaintiffs contracted with First Republic whereby Plaintiff would deposit monies into First Republic and First Republic would provide private client banking services and required First Republic to use commercially reasonable efforts to detect, identify, intercept, prevent stop and/or remedy fraudulent and suspicious activities.

69.     As set forth herein, First Republic breached their contract with Plaintiffs and their duties to comply with FDIC Regulations, in their repeated failures to detect Doe's fraudulent and suspicious conduct from 2016 through 2020.

70.     Plaintiff, on the other hand, complied with their obligations under the contract.

71.     As a direct and proximate result of Defendant's breaches, Plaintiff has been damaged.

WHEREFORE, Plaintiffs demands judgment against Defendants for compensatory damages, punitive damages, costs of suit and reasonable attorney's fees.

## FOURTH COUNT

### (BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING)

72.     Plaintiffs repeat and reallege each of the allegations set forth in the preceding paragraphs as if set forth at length herein.

73.     Applicable law implies a covenant of good faith and fair dealing in all contracts, including in the subject contract.

14

74.      This covenant requires, among other things, that each party to a contract must act in good faith in performing its obligations under the contract and deal fairly with the other parties to the contract.

75.      Actions taken in bad faith or with an improper motive to destroy or injure the right of the other party to receive the benefits or reasonable expectations of the contract will breach the implied covenant.

76.      The above-referenced actions and inactions of First Republic breached the covenant of good faith and fair dealing.

77.      In fact, First Republic's failure to abide by their internal policies and procedures, as well as the agreed upon security measures required by Plaintiffs and the FDIC; was recklessly abandoned by First Republic through its egregiously continuing and repeated acquiescence to Jane Doe's fraudulent wire transfers and her criminally obtained cash withdrawals. Accordingly, this conduct constitutes commercial bad faith.

78.      As a direct and proximate result of Defendant's breaches, Plaintiff has been damaged.

WHEREFORE, Plaintiffs demands judgment against Defendants for compensatory damages, punitive damages, costs of suit and reasonable attorney's fees.

## FIFTH COUNT

### (Conversion of Instrument Pursuant to N.S.J.A. 12A:3-420)

79.      Plaintiffs repeat and reallege each of the allegations set forth in the preceding paragraphs as if set forth at length herein.

80.      N.J.S.A. 12A:3-420 provides that "[a]n instrument is also converted if it is taken by transfer, other than a negotiation, from a person not entitled to enforce the instrument or a bank

makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment."

81.     As set forth above, First Republic transferred funds by wire transfer and/or cash withdrawal from Plaintiff to Jane Doe and/or Jack Doe, including entities, trusts and other agents associated with them despite nether Jane Doe nor Jack Doe entitled to receive such payments.

82.     With respect to both the wire transfers and issuance of large cash withdrawals, First Republic acted in bad faith and did no adhere to applicable reasonable commercial standards and the legal duties owed to Plaintiffs.

83.     As a direct and proximate result of Defendant's breaches, Plaintiff has been damaged.

WHEREFORE, Plaintiffs demands judgment against Defendants for compensatory damages, punitive damages, costs of suit and reasonable attorney's fees.

## SIXTH COUNT

### (Common Law Conversion)

84.     Plaintiffs repeat and reallege each of the allegations set forth in the preceding paragraphs as if set forth at length herein.

85.     As set forth herein, First Republic allowed Jane Doe to effectuate wire transfers and cash withdrawals from Plaintiffs' accounts without Lukacs's knowledge or consent.

86.     First Republic benefitted from unlawfully processing Jane Doe's wire transfers and cash withdrawals.

87.     As such, First Republic unlawfully converted funds from Plaintiffs in an amount to be proven at trial.

88.     As a direct and proximate result of Defendant's breaches, Plaintiff has been damaged.

WHEREFORE, Plaintiffs demands judgment against Defendants for compensatory damages, punitive damages, costs of suit and reasonable attorney's fees.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury.

**NAGEL RICE, LLP**
103 Eisenhower Parkway\
Roseland, NJ 07068
(973) 618-0400
Jrice@nagelrice.com
Attorney for Plaintiff, LD Management LLC

By: **S/ *Jay J. Rice***

Dated:  October 11, 2021