UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **LD MANAGEMENT LLC AND MICHAEL LUKACS,**<br><br>    **Plaintiffs,**<br><br>    v.<br><br>**FIRST REPLUBLIC BANK, INC.,**<br><br>    **Defendant.** | Civ. No. 21-18427 (KM)<br><br>**OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

Plaintiffs Michael Lukacs and LD Management LLC ("LDM") assert various statutory and state law claims against First Republic Bank, Inc. ("First Republic") arising out of the alleged embezzlement of funds from Plaintiffs' bank accounts by an employee of LDM. Now before the Court is First Republic's motion (DE 8) to dismiss the Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons stated herein, I will **GRANT** First Republic's motion to dismiss, without prejudice to amendment.

**I. BACKGROUND**[1]

Michael Lukacs is the managing member of LDM, a limited liability company whose principal place of business is at Lukacs' residence in Franklin Lakes, New Jersey. (Compl. ¶¶ 8–9.) Both Lukacs and LDM held bank accounts at First Republic, a financial institution headquartered in San

---

[1] Certain citations to the record are abbreviated as follows:

   DE = Docket entry in this case
   Compl. = Complaint (DE 1)
   MTD = First Republic's Brief in Support of its Motion to Dismiss (DE 8-1)
   Opp'n = Plaintiffs' Brief in Opposition to the Motion to Dismiss (DE 13)
   Reply = First Republic's Reply Brief in Support of its Motion to Dismiss (DE 16)
   Surreply = Plaintiffs' Surreply in Further Opposition to the Motion to Dismiss (DE 19)

1

Francisco, although Plaintiffs' accounts were managed by First Republic's New York City branch. (*Id.* ¶¶ 10–11.) Plaintiffs allege that First Republic breached various duties in allowing a former employee of LDM ("Jane Doe") to embezzle funds from Plaintiffs' bank accounts over a period of several years. (*Id.* ¶¶ 2–3.)

The plot to misappropriate funds allegedly began in 2014, when Doe submitted two separate documents to First Republic adding herself as an authorized user to Plaintiffs' accounts. (*Id.* ¶ 21.) The first document, LDM's Amended and Restated Company Agreement, named both Lukacs and Doe as company managers with "the power to act independently and alone without the other's consent." (*Id.* ¶ 22.) The second document was a New York Short Form Power of Attorney designating Doe as Lukacs' power of attorney and agent, notarized by Doe herself. (*Id.* ¶ 25.) Lukacs' signatures on the two forms were allegedly "grossly inconsistent with each other" and with the signature on the original 2010 LDM Company Agreement. (*Id.* ¶¶ 24–25.)

The first unauthorized transaction came in June 2016, when Doe requested a $250,000 cash withdrawal. (*Id.* ¶ 29.) Although First Republic's managing director noted that the withdrawal "will likely cause some red flags with our new compliance team, due to the nature of the large amount, especially in relation [to] the account balances," the withdrawal was ultimately fulfilled. (*Id* ¶¶ 29–30.) Evidently emboldened, Doe would go on to embezzle more than $1 million in cash withdrawals and wire transfers from April 2018 to April 2020. (*Id.* ¶ 32.)

These improper cash withdrawals, often exceeding $50,000, followed a pattern. (*Id.* ¶ 34.) First, Doe would request a cash withdrawal from First Republic's New York City branch and arrange for it to be picked up by a third party, usually her husband. (*Id.* ¶¶ 33, 37–38.) Doe used a "fraudulent signature stamp" imitating Lukacs' signature "as a false basis to have First Republic authorize large cash withdrawals that would be picked up persons other than the account holder." (*Id.* ¶ 36.) Occasionally, First Republic requested verbal confirmation of the cash withdrawals and of a third-party

pickup, for which confirmation by Doe was "routinely accept[ed]." (*Id.* ¶ 39.) Plaintiffs claim that Lukacs never authorized third-party pickups, and apparently First Republic never informed him of these withdrawals. (*Id.* ¶¶ 35, 38.)

In July 2020, Doe requested a $500,000 cash withdrawal. (*Id.* ¶ 40.) First Republic advised that a sum this large would require conferment with First Republic's Bank and Secrecy Act and Anti-Money Laundering and Security officer. This, said the bank, would "require background information and a history of past cash withdrawals," and the bank reserved the right to "decline future recurring large cash withdrawals." (*Id.* ¶ 41.) Doe cancelled the transaction, which was never reported to Lukacs. (*Id.* ¶¶ 42–43.)

In addition to the cash withdrawals, Doe wrote checks from Lukacs' personal account "to herself or to trusts she controlled." (*Id.* ¶ 45.) Using the forged signature stamp, she also requested wire transfers to be sent to her personal bank account. (*Id.* ¶¶ 46–47.)

Doe's employment with LDM eventually ended in "late 2020 . . . as a result of her criminal and fraudulent conduct." (*Id.* ¶ 44.)

On October 12, 2021, plaintiffs LDM and Lukacs filed a six-count Complaint against First Republic, asserting the following claims: (I) Violation of N.J. Stat. Ann. §§ 12A:4A-202–203; (II) Negligence; (III) Breach of Contract; (IV) Breach of Covenant of Good Faith and Fair Dealing; (V) Conversion of Instrument Pursuant to N.J. Stat. Ann. § 12A:3-420; and (VI) Common Law Conversion. (*Id.* ¶¶ 53–88.) First Republic filed its motion to dismiss Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(6) on December 21, 2021.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Phillips v.*

*Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (Rule 8 "requires a 'showing' rather than a blanket assertion of an entitlement to relief") (citation omitted).  Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face."  *Twombly*, 550 U.S. at 570; *see also West Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank*, 712 F.3d 165, 169 (3d Cir. 2013).

That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  While "[t]he plausibility standard is not akin to a 'probability requirement' … it asks for more than a sheer possibility."  *Id.*

Rule 12(b)(6) provides for the dismissal of a complaint if it fails to state a claim upon which relief can be granted.  Defendants, as the moving party, bear the burden of showing that no claim has been stated.  *Animal Sci. Prods., Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n.9 (3d Cir. 2011).  For the purposes of a motion to dismiss, the facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff.  *N.J. Carpenters & the Trs. Thereof v. Tishman Const. Corp. of N.J.*, 760 F.3d 297, 302 (3d Cir. 2014).

Generally, "a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings."  *Doe v. Princeton Univ.*, No. 21-1458, 2022 WL 965058, at *3 (3d Cir. Mar. 31, 2022) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)).  Where a document, however, is "integral to or explicitly relied upon in the complaint," it "may be considered without converting the motion to dismiss into one for summary judgment" under Rule 56.  *Id.* (citing *Doe v. Univ. of Scis.*, 961 F.3d 203, 208 (3d Cir. 2020)).  For a court to consider such a document, that document must be "undisputedly authentic."  *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

4

### III. DISCUSSION[2]

First Republic advances the following six arguments in support of its motion to dismiss: first, all of Plaintiffs' claims are time-barred; second, Plaintiffs' Uniform Commercial Code ("UCC") claims fails to survive the pleading standard under Rule 8 or Rule 12(b)(6); third, the common law claims are preempted by the UCC; fourth, Counts III and IV must be dismissed because Plaintiffs do not identify the provisions allegedly breached; fifth, the tort claims fail because the bank-customer relationship between First Republic and Plaintiffs is not a "special relationship"; and sixth, all claims against First Republic are futile because Plaintiffs agreed to indemnify and hold First Republic harmless for any losses allegedly caused by Jane Doe. (*See* MTD at 16–39.) I will examine each argument in turn.

#### A. Time-Bar Arguments

##### 1. UCC claims – statutes of repose

As noted, the Complaint asserts UCC claims under the New Jersey version of the UCC, but the parties now agree that Count I is governed by California law and Count V is governed by New York law. On the face of it, then, the complaint must be dismissed without prejudice and amended, and I will grant the plaintiff leave to do so. For the guidance of the parties and to avoid wasteful motion practice, however, I have where possible discussed alternative grounds for dismissal of these claims in relation to applicable California and New York law.

###### i. Count I

Count I is brought under the New Jersey version of the UCC, N.J. Stat. Ann. §§ 12A:4A-202–203 (Compl. ¶ 53–62) and would be subject to a one-year

---

[2] Plaintiffs accept First Republic's choice of law analysis. (Opp'n at 8.) Thus, the following law applies: Count I is subject to California law, Counts II–IV and VI are subject to New Jersey law, and Count V is subject to New York law. (*Id.*) Because Plaintiffs pled Counts I and V under New Jersey law but have agreed to apply California and New York law, Counts I and V must be dismissed for this reason (in addition to the reasons further elaborated later in this opinion). *Lawmen Supply Co. of N.J. Inc. v. Glock, Inc.*, 330 F. Supp. 3d 1020, 1044 (D.N.J. 2018).

5

statute of repose under *id.* 12A:4A-505 (New Jersey version of UCC 4A-505). The parties now agree, however, that this claim is governed by California law. (Opp'n at 8). Accepting that concession *arguendo,* I note that under the analogous provisions of California's UCC, an identical one-year period of repose would apply:

> If a receiving bank has received payment from its customer with respect to a payment order issued in the name of the customer as sender and accepted by the bank, and the customer received notification reasonably identifying the order, the customer is precluded from asserting that the bank is not entitled to retain the payment unless the customer notifies the bank of the customer's objection to the payment within one year after the notification was received by the customer.

Cal. Com. Code § 11505 (California version of UCC 4A-505).

The Complaint, filed on October 12, 2021, does not contain any allegations of fraudulent activity occurring on or after October 12, 2020, and the dates of any earlier complaints to the bank are not alleged. The UCC time limit, however, applies only where the customer has received "notification reasonably identifying the [payment] order," and the one-year period runs from such receipt. *Id.* Where the plaintiff customer plausibly alleges non-receipt of such notice, the bank's motion to dismiss may be denied. *See Solarmore Mgmt. Servs. Inc. v. Bankr. Estate of DC Solar Sols.*, No. 19-2544, 2022 WL 358245, at *4 (E.D. Cal. Feb. 7, 2022) ("The [c]ourt cannot at this early [motion to dismiss] stage conclude [p]laintiff received notice" where plaintiff's complaint alleged the bank statements "were sent to an address not shared with [p]laintiff").

The Complaint here, unlike that in *Solarmore,* makes no mention of bank statements as such. It does broadly allege that "all of First Republic's communications for such transfers were with Doe." (Opp'n at 13) (citing Compl. ¶¶ 39, 48–49.) Paragraph 39 alleges that First Republic "routinely" accepted Doe's verbal confirmations that her husband would pick up cash withdrawals pursuant to her written instructions. (Compl. ¶ 39.) Paragraphs 48 and 49 allege that "First Republic failed to take any steps to notify Lukacs of

the suspicious activity via email or phone." (*Id.* ¶¶ 48–49.) Plaintiffs never allege with specificity the date(s) when they became aware of the purported fraud and when they first notified First Republic that they disputed these transactions.[3]

Plaintiffs do assert that the "bank statements were delivered to Doe" and not Lukacs, denying them reasonable notice. (Opp'n at 11–13) (citing Compl. ¶¶ 39, 48–49.) *Cf. Solarmore, supra.* Those assertions, however, appear in the Plaintiffs' Opposition Brief, not in the Complaint.

Nevertheless, I will deny the motion to dismiss based on the UCC time-bar of one year. My reasons are as follows.

The time bar here is analogous for these purposes to a statute of limitations, which is an affirmative defense, and indeed one that may be waived if not asserted in the defendant's answer. *See* Fed. R. Civ. P. 8(c)(1). "Technically, the Federal Rules of Civil Procedure require a defendant to plead an affirmative defense, like a statute of limitations defense, in the answer, not in a motion to dismiss." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). Now it is true that, on a Rule 12(b)(6) motion, a complaint may nevertheless be dismissed on statute of limitations grounds, but "only when the statute of limitations defense is apparent on the face of the complaint." *Wisniewski v.*

---

[3] As a fallback, Plaintiffs propose that the doctrine of equitable tolling suspends the statute of limitations. (Opp'n at 16–17.) "The doctrine of equitable tolling can rescue a claim otherwise barred as untimely by a statute of limitations when a plaintiff has been prevented from filing in a timely manner due to sufficiently inequitable circumstances." *Glover v. FDIC*, 698 F.3d 139, 151 (3d Cir. 2012) (internal quotations omitted). A plaintiff invoking the doctrine must show he: (1) was actively misled by the defendant; (2) was "in some extraordinary way" prevented from asserting his rights; or (3) timely but mistakenly asserted his rights in the wrong forum. *Scatterfield v. Johnson*, 434 F.3d 185, 195 (3d Cir. 2006) (citation omitted). It is true that, in an appropriate case, the court considering a motion to dismiss must consider the applicability of tolling doctrines. *See Wisniewski*, 857 F.3d at 157–58 (reversing dismissal and remanding for consideration of whether time spent in exhausting administrative remedies tolled the § 1983 limitations period). Because I am denying the motion to dismiss on these particular grounds, I do not reach the issue of whether tolling applies to this statute of repose, or whether its requirements are met.

*Fisher,* 857 F.3d 152, 157 (3d Cir. 2017) (§ 1983 case, citing *Schmidt,* 770 F.3d at 249).

> "Since the applicability of the statute of limitations usually involves questions of fact for the jury," *Van Buskirk v. Carey Can. Mines, Ltd.*, 760 F.2d 481, 498 (3d Cir. 1985), "if the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)[,]" *Schmidt,* 770 F.3d at 249 (internal quotation marks, brackets, and citation omitted).

*Fried v. JP Morgan Chase & Co.,* 850 F.3d 590, 604 (3d Cir. 2017).

I therefore tread carefully. The applicability of the statute of limitations is not so apparent from the face of this Complaint that the Court may grant a motion to dismiss. It is alleged that more than a year passed between the transfers and the filing of this action, and it may also be true that Plaintiffs did not make any earlier complaint to the bank within that one-year period, although that is not clear. Even so, the allegations of the Complaint are sufficient to suggest that the plaintiffs—who do not have an obligation to pre-rebut this affirmative defense in their complaint—allege that they did not receive reasonable notice of the transfers that would set the one-year clock ticking. Those allegations present factual issues not suitable for resolution on a motion to dismiss.

Accordingly, while noting that the Complaint must be dismissed and amended to assert claims under California law, in the alternative I would deny the motion to dismiss Count I based on the alternative grounds of the one-year time bar of UCC 4A-505.

### ii. Count V

Count V is also pled under the New Jersey version of the UCC, specifically, N.J. Stat. Ann. 12A: 3-420. The parties now agree, however, that New York law applies to this claim. And the Complaint must be dismissed so that it can be amended to allege this claim under New York law.

Once again, however, the issue in the alternative is whether such a claim is barred by a period of repose within the UCC. In particular, the parties

dispute whether a one-year or three-year period applies under New York's version of the UCC, N.Y. U.C.C. § 4-406(4). Here, however, the plaintiff's shifting choice of law poses a greater barrier to consideration of that issue, even in the alternative. Above, I was able to transplant the analysis, *mutatis mutandis,* to another state's identical provision under its version of the UCC. But the court's power to do so is limited to a very clear case of agreement between the parties. And here the parties do not agree.

Count V is pled under N.J. Stat. Ann. § 12A:3-420 (conversion of instrument). The parties debate which New York UCC section would be most analogous. First Republic proposes applying "N.Y. U.C.C. §§ 4-404 through -406." (MTD at 25–26.) New York Sections 4-404 and 4-405 concern a bank's obligation to pay checks older than six months and the death/incompetence of a customer—neither of which is relevant here. New York Section 4-406 imposes a duty on customers, thereby limiting a bank's exposure, and so seems a poor basis for a cause of action.

Plaintiffs offer as an alternative N.Y. U.C.C. § 3-419. (Opp'n at 20.) That statute provides that "[a]n instrument is converted when it is paid on a forged indorsement." N.Y. U.C.C. § 3-419(1)(c). However, Plaintiffs do not allege that Doe's indorsement on the check was forged.[4] Rather, the basis of Plaintiffs' UCC conversion claim is that First Republic paid out on checks for a person not entitled to authorize such payment (i.e., the checks bore Doe's *unauthorized* signature/indorsement).[5]

In short, the Court cannot further analyze the plaintiffs' claim because it is not clear what the plaintiffs' claim is. Plaintiffs request leave to amend their

---

[4] Additionally, "[t]here is no forgery of an indorsement if the real payee makes the indorsement." 81 N.Y. Jur. 2d Negotiable Instruments and Other Commercial Paper § 610.

[5] *See* N.Y. U.C.C. § 4-401, which places "strict liability upon a bank that charges against its customer's account any 'item' that is not 'properly payable.'" *Pincover v. J.P. Morgan Chase Bank, N.A.*, No. 21-3524, 2022 WL 864246, at *6 (S.D.N.Y. Mar. 22, 2022) (citing N.Y. U.C.C. § 4-401(1)); *2006 Frank Calandra, Jr. Irrevocable Tr. v. Signature Bank. Corp.*, 816 F. Supp. 2d 222, 235 (S.D.N.Y. 2011).

Complaint to plead their conversion claim under whatever statute(s) they deem appropriate. (Opp'n at 21.) That is the appropriate course. The complaint will be dismissed without prejudice to the filing of a properly supported motion to amend the complaint within 30 days.[6]

### 2. All claims (time bar based on account agreements)

Republic contends that all of Plaintiffs' claims fail because the agreements governing Plaintiffs' accounts with First Republic (the "Account Agreements") require Plaintiffs to bring any claims against First Republic within one year of accrual. (MTD at 16–17.) The Complaint, filed on October 12, 2021, does not contain any allegations of fraudulent activity occurring on or after October 12, 2020. Plaintiffs counter that these Account Agreements are documents outside the pleadings and should therefore not be considered at the motion to dismiss stage. (Opp'n at 9–10.)

---

[6] At that point, the dispute over the application of New York's UCC period of repose may be ripe for decision. As to certain disputes regarding unauthorized signatures or alterations, the New York version of the UCC contains two time limits:

> Without regard to care or lack of care of either the customer or the bank a customer who does not **within one year** from the time the statement and items are made available to the customer . . . discover and report **his** unauthorized signature or any alteration on the face or back of the item or does not **within three years** from that time discover and report **any** unauthorized indorsement is precluded from asserting against the bank such unauthorized signature or indorsement or such alteration.

N.Y. U.C.C. § 4-406(4) (emphasis added). Both parties cite this statute, but the defendants claim that the one-year period applies, while the plaintiffs argue for the three-year period.

For the guidance of the parties, I note that the one-year deadline appears to be reserved for a customer's discovery of the customer's own unauthorized signature. N.Y. U.C.C. § 4-406(4) ("a customer who does not within one year . . . discover and report his unauthorized signature"). The rationale for the shorter period is stated in the Official Comment: "In the case of the . . . unauthorized signature of the customer *himself* the absolute time limit is one year. In the case of unauthorized indorsements, it is three years. This recognizes that there is little excuse for a customer not detecting . . . a forgery of *his own* signature." N.Y. U.C.C. § 4-406 cmt. 5 (emphasis added).

Generally, a court "may not consider matters extraneous to the pleadings." *In re Burlington Coat Factory*, 114 F.3d at 1426 (citing *Angelastro v. Prudential-Bache Sec., Inc.*, 764 F.2d 939, 944 (3d. Cir. 1985). However, documents "integral to or explicitly relied upon in the complaint" may be considered "without converting the motion into one for summary judgment." *Id.* (citing *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)); *see also Pension Benefit*, 998 F.2d at 1196 ("[A] court may consider an [i]ndisputably authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.").

Here, the parties dispute whether the Account Agreements attached to First Republic's motion to dismiss qualify as integral documents, and also dispute their authenticity.

For determining whether a document is integral, "[w]hat is critical is whether the claims in the complaint are 'based' on an extrinsic document and not merely whether the extrinsic document was explicitly cited." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (citation omitted). Furthermore, "[i]t is not enough that a putatively integral document be critical for an affirmative defense, or bear on an essential element of the claim. The rule is applied when the claim would not have existed but for the document." *Dix v. Total Petrochemicals USA, Inc.*, No. 10-3196, 2011 WL 2474215, at *1 (D.N.J. June 20, 2011). For example, when, as here, a plaintiff asserts a breach of contract claim, a court may consider the text of the contract. *Dix*, 2011 WL 2474215, at *1 (citing *Barnum v. Millbrook Care Ltd. P'ship*, 850 F. Supp. 1227, 1232 (S.D.N.Y. 1994); *Freightmaster USA, LLC v. FedEx, Inc.*, No. 14-3229, 2015 WL 1472665, at *1 n.2 (D.N.J. Mar. 31, 2015). If authentic, it would appear the Account Agreements can be considered as integral.

However, Plaintiffs also dispute the authenticity of the Account Agreements, claiming that "the documents. . . do not evidence Lukacs' consent to the terms and conditions" because "each of the signatures . . . mirror the alleged fraudulent signature of Lukacs utilized by Jane Doe." (Surreply at 3.)

11

As noted in Section II, *supra*, on a motion to dismiss, the court must accept as true the factual allegations of the complaint. Thus, I must credit Plaintiffs' claim that the signatures on the Account Agreements are forged—and the Agreements therefore cannot be considered indisputably authentic. *See, e.g., Fiscus v. Combus Fin. AG*, No. 03-1328, 2006 WL 1722607, at *11 (D.N.J. June 20, 2006) (accepting as true plaintiff's claim that his signature was forged within a contract that might have otherwise warranted dismissal of his complaint).

I therefore deny the motion to dismiss Plaintiffs' claims insofar as such dismissal would be based on the one-year time bar in the Account Agreements.[7]

### B. Preemption of Common Law Claims

Next, First Republic asserts that all of Plaintiffs' non-UCC state law claims must be dismissed because they are preempted by the UCC. (MTD at 27–28.) Because neither party points to any relevant distinction between New Jersey law and that of New York or California, I discuss the issue as an alternative basis for decision, and as a guide to any forthcoming amended version of the Complaint.

All three states' laws provide that "[u]nless displaced [i.e., preempted] by the particular provisions of" each state's respective UCC, "the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions." N.J. Stat. Ann. § 12:A:1-103(b); N.Y. U.C.C. § 1-103(b); Cal. Com. Code § 1103(b). Put differently, "the UCC does not displace the common law of tort as it affects parties in their commercial dealings except insofar as the common law would thwart the purposes of the code." *N.J. Bank,*

---

[7] For similar reasons, I do not address First Republic's argument that the Account Agreements provide that Plaintiff must indemnify and hold First Republic harmless from all actions and claims. (MTD at 37–39.) Such an argument presupposes the authenticity and validity of those Agreements, which are alleged to be forged.

*N.A. v. Bradford Sec. Operations, Inc.*, 690 F.2d 339, 346 (3d Cir. 1982) (citation omitted). In some tension with that seemingly narrow application is the general principle that the UCC is to be "liberally construed and applied." N.J. Stat. Ann. § 12:A:1-103(a); N.Y. U.C.C. § 1-103(a); Cal. Com. Code § 1103(a). I now focus my analysis on whether each of Plaintiffs' common law claims is preempted by the UCC.

### 1. Negligence (Count II)

Plaintiffs maintain that First Republic breached its duty of care "to protect Plaintiff's bank accounts and funds secure and free from fraud, theft and embezzlement." (Compl. ¶ 64.) While unauthorized checks and wire transfers typically fall within the sole purview of the UCC, claims alleging negligence in the opening of an account may go forward. *ADS Assocs. Grp., Inc. v. Oritani Sav. Bank*, 99 A.3d 345, 359 (N.J. 2014) (Albin, J., dissenting) (citing *Eisenberg v. Wachovia Bank, N.A.*, 301 F.3d 220, 224 (4th Cir. 2002); *Gilson v. TD Bank, N.A.*, No. 10-20535, 2011 WL 294447, at *9 (S.D. Fla. Jan. 27, 2011)).

In their brief, Plaintiffs argue that the essence of their negligence claim is First Republic's acceptance of "blatantly forged documents and an invalid [power of attorney] giving Doe authority to act on behalf of Plaintiffs." (Opp'n at 22.) This is belied by the negligence count in the Complaint, however. Rather than dwell on the original sin of the accounts' opening, Plaintiffs instead assert that First Republic's breach of duty occurred "repeatedly over [the] course of years" that followed. (Compl. ¶ 64.) Indeed, Plaintiffs "specifically" allege that "First Republic breached its duty in repeatedly acceding to Jane Doe's requests to make large cash withdrawals that would be picked up from the First Republic New York branch by [her husband]." (Compl. ¶ 65.)

Once again, Plaintiffs ask the court to accept what amounts to an amendment of the Complaint *via* statements in their brief. That the Court cannot do. *Pennsylvania ex. rel Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the

briefs in opposition to a motion to dismiss."). Count II, as alleged, is dismissed as preempted. But this defect could conceivably be remedied by amendment, and this dismissal, too, is entered without prejudice to the filing of a properly supported motion to amend within 30 days.

### 2. Breach of contract (Count III)

Count III alleges that "First Republic breached their contract with Plaintiffs . . . in their repeated failures to detect Doe's fraudulent and suspicious conduct from 2016 through 2020." (Compl. ¶ 69.) In a previous case, *Harborview Capital Partners, LLC v. Cross River Bank*, I dismissed as preempted a plaintiff's breach of contract claim against a bank for its role in allowing a fraudster to wire funds from a company into a separate account. No. 21-15146, 2022 WL 1224960, at *9 (D.N.J. Apr. 26, 2022). I reasoned that the breach of contract claim—predicated on the bank's alleged acceptance of unauthorized payment orders, failure to adhere to a commercially reasonable security procedure, and actions (or omissions) with respect to fund transfers— invoked "the very subject matter covered by Article 4A." *Id.* (citing *ADS*, 99 A.3d at 359.)[8] I find this case to be similar and therefore dismiss Count III, as currently alleged, as preempted by the UCC. Again, the dismissal is entered without prejudice to submission of a properly supported motion to amend within 30 days.

### 3. Breach of covenant of good faith and fair dealing (Count IV)

Count IV is preempted for the same reasons. Plaintiffs' breach of covenant of good faith and fair dealing is based on the same conduct as their breach of contract claim. Specifically, Plaintiffs submit First Republic

---

[8] Courts in New York and California have held the same in similar circumstances. *See 2006 Frank Calandra, Jr. Irrevocable Tr. v. Signature Bank Corp.*, 816 F. Supp. 2d 222, 236 (S.D.N.Y. 2011) (breach of contract claim was preempted because "[a]ny common law claims about the existence of unauthorized wire transfers or an unauthorized signature on a check, and the mechanics of how those transactions were conducted, fall within the regime of Articles 4-A and 4"); *Forefront Telecare Inc. v. Bank of Am., N.A.*, No. 19-3866, 2019 WL 13201988, at *4 (N.D. Cal. Aug. 21, 2019) (Considering it "likely that the UCC displaces [p]laintiff's claim for breach of contract" where a fraudster wired funds out of plaintiff's account).

"recklessly abandoned" its contractual and statutory duties "through its egregiously continuing and repeated acquiescence to Jane Doe's fraudulent wire transfers and her criminally obtained cash withdrawals" in conduct amounting to "commercial bad faith." (Compl. ¶ 77.)  Again, this falls under the "very subject matter covered by Article 4A." *Harborview Capital Partners*, 2022 WL 1224960, at *9. Count IV is dismissed, like the others, without prejudice to amendment.

### 4. Conversion (Count VI)

Plaintiffs' conversion claim is likewise preempted.  Plaintiffs allege "First Republic allowed Jane Doe to effectuate wire transfers and cash withdrawals from Plaintiff's accounts without Lukacs' knowledge or consent."  (Compl. ¶ 85.)  The UCC also preempts Plaintiffs' conversion claim to the extent the Complaint alleges conversion of unauthorized checks.  *See, e.g.*, *Lembo v. Marchese*, 231 A.3d 735, 746 (N.J. 2020) (Holding the "common law conversion claim is preempted by the UCC" where plaintiff alleged improper payment on unauthorized checks).

Having found multiple grounds for dismissal, I do not reach First Republic's remaining arguments.

## IV. CONCLUSION

For the foregoing reasons, First Republic's motion to dismiss is GRANTED without prejudice to the filing, within 30 days of a properly supported motion to amend the complaint.  An appropriate order accompanies this Opinion.

Dated: September 27, 2022

/s/ Kevin McNulty
_____
Hon. Kevin McNulty
United States District Judge